Good morning, Your Honors. I'm Eric Dysartson representing the plaintiffs. I'd like to reserve five minutes for rebuttal, if I may. This is a securities class action involving a company that had an initial public offering and a further secondary public offering during the class period in which it had financial statements that the plaintiffs contend substantially overstated what the company was actually earning on the method of revenue recognition permitted under YAP that they said they were using, the percentage of completion method. It's a case that was dismissed with prejudice by the district court, and the questions on my appeal basically are, first, whether the complaint states a claim under either the 33 Act for false or misleading statements or omissions of the registration statement, which is an element, and second, whether it states a claim under the 34 Act, Section 10b, where slander is an element and you have to reach much higher pleading standards, have to plead with particularity for Section 10b claims, have to raise a strong instance of slander. The next question is whether the plaintiffs can state a claim if they were given leave to come in, which, according to this Court's issue, which I submit isn't much of an issue at this point because a very similar opinion by the same judge was reversed by this Court in Brutto v. Dura Pharmaceuticals. Basically, the two opinions are verbatim in many respects, the same that Judge Lorenz wrote. So I don't think loss causation is really an issue anymore. If we pleaded misleading statements, materially misleading statements, we've got enough under Brutto v. Dura Pharmaceuticals to have loss causation. With respect to whether the complaint states a claim on which relief can be granted, you've got two different standards at issue. One is for 33 Act claims. One is for 34 Act claims. Ordinarily, because they don't involve fraud or don't require a showing of fraud to sustain a claim under the 33 Act, they're subject to general notice pleading standards. You don't have to plead a 33 Act claim with particularity. But you pled this as fraud. Is that right? Well, Your Honor, the Supreme Court held in Herman McLean v. Huddleston that sham conduct may, in fact, violate both the 33 and 34 Act. And in Herman McLean v. Huddleston, it said the remedies are cumulative and you can't rely on the availability of a remedy under one of the other Act. We've pleaded statements, financial statements, in prospectus and registration statement that we contend are overstated and violated gap. That's enough to say the 33 Act claim. We have gone on and we have pleaded, I think, with great particularity, facts that we believe raise a strong inference that the violations were intentional, giving us a 34 Act claim as well. This Court in Vess against Kibagaiji said that there are instances where you've got both strict liability or negligence claims in a case and fraud claims in the case. Now, if the strict liability claims are based on fraud, they'll sound in fraud and particularity is required. There are a number of situations where that might happen. If, for example, a prospectus contains a statement that is false because not genuinely believed. This Court, going back to at least the Apple opinion, has said that a statement of opinion or belief can be false and misleading if any of three implied representations isn't the case. One, that it's genuinely believed. Two, that it has a reasonable basis. And three, that it's not severely undermined or materially undermined by undisclosed negative factors. Well, if the basis of the claim is that it wasn't genuinely believed, I suppose that's a 33 Act claim, a Section 11 claim, that sounds in fraud and you're going to have to plead with some particularity. The example might be if a prospectus states what the funds raised are going to be used for and there's an intention, a fraudulent intent to use it for something else. An example of those facts would be the one that gave rise to the statement you see in a lot of Supreme Court opinions. The state of a man's mind is as much a fact as the state of his digestion. It comes from a Chancery Division opinion from the 19th century by Lord Justice Baum, where it was exactly that, a prospectus that misrepresented the intent of the people raising money as what they're going to use the funds for. You're going on here, but I have a first problem. Yes, Your Honor. As I understand it, what you're saying is that the company proclaimed that they were using an accounting method known as percentage of completion. Yes. I don't think there's a doubt about that. You also specifically allege in your last third amended complaint that the plaintiffs allege that the company's reports and public statements were false and misleading because they were based upon fraudulent accounting practices. The company used an accounting method known as percentage of completion. So it seems to me that that's the center of everything. If you take out the percentage of completion problem, you're all through, right? That's what you're relying on. Well, if I take out the notion that it was fraudulent, I've still got a 33-act claim. It's a lot like this against Ibagaichi, where Novartis made representations about Ritalin, and those representations were alleged to be fraudulent and part of a fraudulent conspiracy with the American Psychiatric Association and CHAP. This court held that. Well, wait a minute. Just a second. If you're going to go to any other provision of the Act, are you still going to rely on the accounting practices? We're relying on the accounting practices. You stated that they're false. So doesn't that permeate every claim you have? I've stated that they're false and that the statements in the prospectus and registration statement are false. If you said they are fraudulent accounting practices, how can they be fraudulent for one accounting practice, for one cause of action, but not for another? If you said that the accounting practice itself, which goes across the board for all conduct, is only fraudulent at certain times, it's like I'm pregnant for this cause of action, but not for that one. Maybe I'm missing something. Maybe you can help me understand that, because your pleading is not ambiguous in what you've said, and I understand your – I understand what you're saying about the gap. I'll try to – I'll try to help you, Your Honor. One, Vest cites the Eighth Circuit case in NationsMart, which alleges the same false statements for Section 11 claims and Section 10b claims. And the Court said those Section 10b claims in fraud are no good. They're not pleaded with particularity. The Section 11 claims based on the same statements, they're good. They work because the representations about it being fraudulent for the Section That's what Vest says. I understand that. I'm going to – I have to admit to you, I'm going to have to go back and again read all this, because it's complicated and convoluted. But what I can't figure out is if you have various acts floating around, and some are fraudulent and some are not, I can understand how you can move around. But when you base your complaint or sound it in fraud by saying this is the act, that business of recording your revenues, that business of showing work in progress, violates GAAP, it's fraudulent, you didn't say, gee, I think it's kind of confusing. You said it's fraudulent. So if that's the basis of everything that they did, which is what your complaint says, I think, including all of the witnesses that are saying how they did this, to pump up their earnings so they could pump the stock, I don't know how you can remove that without everything falling apart. I think it's like in Vest where Novartis made statements about Ritalin that were alleged to be misleading, were alleged to be part of a fraudulent conspiracy with two other organizations. This Court said that conspiracy, fraudulent conspiracy, was the entire basis of the claims against the two other organizations. They sound in fraud. They're out of the case. With respect to what Novartis said, what Novartis said would be actionable not just if it was fraudulent, but also if it was negligently misleading. Kennedy. You've got negligent, misleading, and conspiracy there. Here you've got one thing, accounting practices. Well, here I've got accounting practices. I've got a strict liability statute. I can plead on the subject of negligence or state of mind. Those are affirmative defenses that I'm not supposed to plead about for a Section 11 claim. If you want me to plead on affirmative defense or plead on that subject, I'll do it and I'll allege. The other question here is you said three times to do this. I'm going on four times. I'm going on what you've got here. Maybe it's my misunderstanding and it's a very long complaint. It's just that when you center, when we're focused on the accounting practice, very focused, all the facts relate to the accounting practice. And when you label it as fraudulent and fraudulent accounting practices, it seems to me everything that you allege with a cause of action is a fraud. And if you remove that, then the accounting practices are fine. Well, the defendants contend I haven't pleaded facts to show signature. If this Court thinks that that's fatal to the case, I would be, you know, if to save the case, I dismiss the allegations of fraud, I clearly would have a good Section 11 claim. And Congress did not intend plaintiffs to lose their Section 11 claims based on technicalities about whether the defendants did or did not act fraudulently. It's supposed to be strict liability as with the company, an affirmative defense of absence of negligence on the other people. So to throw those out without leave to amend I think conflicts with the intention of the, you know, behind the 33 Act of Congress. Whether I can amend to state a claim to substitute this Court's de novo review, we want to state a claim. It's not a case like this where leave to amend was refused. And I'd like to go on and say that I think I've stated a claim with all the particularities required to plead fraud for the 10b claim. And if you're going to apply it to Section 11 for that, too. This, as you point out, is a very long complaint. I think it's a very detailed complaint. It's a case where we went out and we talked to a lot of people, 28 people, who were in the company or in the company's clients to get the facts for this. You know, the defendants talk about us violating Rule 11. We had a basis for these allegations, Your Honor. And I think that the basis of the allegations that we give is far more particular than what this Court has demanded under Rule 9b in the past. Your opinion in Warshaw v. Zoma, for example, Judge Pragerson. Your opinion in Cooper v. Pickett, 137F3rd. The complaint in this case is far more detailed than what you upheld in Cooper v. Pickett. I think it's far more detailed than what you upheld in Glenn Fitt's securities litigation, the en banc opinion you wrote in 42F3rd. So if you want to apply Rule 9b to the Section 11 claims, I'm assuming you're not going to ask us to raise an inference of slander as to those, but you just want to raise an inference of particularity. What was said? When was it said? Why was it misleading? Give us the reasons why. That's what I've got to do for 9b under Cooper v. Pickett. Warshaw v. Zoma. And Fed v. Price Club. We have clearly done it. This complaint, I know the complaints in all those, three of those cases, and you two judges know the complaints in at least two of them. Those complaints were not anywhere near as detailed as this one. This case satisfies Rule 9b. Next question, do the facts allege raise the inference, the further strong inference required by Section 21db1 of the Securities Exchange Act, of a strong inference of slander? And, again, I think they do. I think that this is a far more detailed case, that complaint, than you ordinarily see. It's a case where we went out and we talked to people in the company. We've got confidential witnesses who can attest to the fact that this company recognized revenue without regard to the labor costs incurred. When they said our policy is to recognize revenue as the labor costs are incurred. Confidential witnesses said they automatically recognized 20 percent on the signing of a contract when no work had been done yet. Is that fraud? Is that deceptive, sloppy? What is that? It's at least reckless. And I think that it is clearly intentional deception when you see people in the company are joking about it, joking about how it's false. Is that fraud? Yes. Okay. Why doesn't your complaint then sound in fraud, and therefore the whole complaint must be subject to Rule 9b? And I'm not going to argue whether it did or not, but do you admit that your whole complaint is subject to the 9b particularity requirement? No, I don't. Even their submission, which I move to strike, that strips the defective allegations of fraud from the complaint leaves enough in the State of Section 11 claim, because there's still my count at the end that says the registration statement had misleading statements in it. And Congress in 1933, it enacted the 33 Act for new securities issues precisely because plaintiffs shouldn't be required and shouldn't have to plead or prove facts to demonstrate the defendant's state of mind. That's to the extent it's relevant in affirmative defense. And to turn Rule 9b or the sounds-in-fraud doctrine into something that repeals the remedies under the 33 Act when the defendants not only have made a statement that's false negligently or not even negligently, for which they're strictly liable, if they acted with fraud, and I happen to say that, I lose my claim, my strict liability claim, that makes no sense, Your Honor. I don't think the law – I don't think making sense means anything. I never thought the Internal Revenue Code made sense or any other statute made sense. It's what the law says and what we interpret it to be under constitutional other standards. So making sense doesn't make any sense to me in this context, because I don't understand it anyway. I mean, when you think about why they do these things, they didn't. And they told you what you had to do, and Rule 9 says something to that. I mean, I'm going to do some more reading on this, because you've challenged how I'm looking at this, and I'm going to have to look at it a little harder, to tell you that. Thank you, Your Honor. I see I'm down to about five minutes left for my rebuttal. I'll save my time.  May it please the Court, I'm Michael McCloskey, and I represent all of the respondents in this action. And to start with, what makes securities fraud cases more complicated than others is that often there's no reason to assume that what is true at the moment that the charge was made was also true at the moment of the alleged misrepresentation. Simply because the alleged misrepresentation conflicts with the current state of the facts does not mean that the charge statement must have been false when made. As a result, the plaintiff must set forth an explanation why the disputed statement was untrue or misleading at the time it was made. You wrote that 10 years ago, Justice Fletcher, in the Glenn Fed Securities Litigation. Call me Judge, not Justice. There's no justice in the Ninth Circuit. Very well. And our lives are open, folks. Regardless of justice, that case was decided about a year before the enactment of the Private Securities Litigation Reform Act. But both that case and that legislation were aimed at preventing the same thing, and that is fraud by hindsight. Since that is exactly what the Third Amendment complaint, the Second Amendment complaint, the original complaint had pled, then this Court should affirm the dismissal of the Third Amendment complaint. Maybe you can help me then. I understand what you've said there, and I understand how you want us to look at this in application, but I'm still having trouble. If this complaint sounds in fraud, and if, as the District Judge found, that the plaintiffs have alleged that the company reports and public statements are false and misleading because they were based upon fraudulent accounting practices, and if the only accounting practice that I can find in this case is the accounting method known as percentage of completion, and the facts that I see, and the witnesses' statements and all, are that they pumped up and reported revenues at a certain time when they should not because there were no offsetting expenses, and then they had an offsetting account for accounts for work in progress, et cetera, and if that's the fraudulent accounting practice, and if it relates to everything they did, and that's the only thing, not conspiracy, not holding a gun to someone, not hiding inventory, then does this sound in fraud? Does this complaint entirely have to meet 9b? And if it doesn't, does the whole thing go away? Yes, yes, and yes. It does sound in fraud. Well, now, help me to understand that. Why, then, counsel cited many cases in his argument about how we can just scrub away that fraud allegation and say, well, it was deceptive, it was misleading, or whatever he said, it was reckless. I don't want to mischaracterize what he said. Why can't you just scrub it away and say, well, let's scrub it off, and we'll start over with another section of the code? Let me give you two reasons. First of all, we're citing vests. We've heard a lot about vests here at argument this morning, and vests is an important case. But vests didn't consider a private securities litigation reform act case. That was a pleadings case. And whether a 9b pleading, in fact, requires certain elements of particularity, and, in fact, this Court decided that it did. But let's also look at the NRA Stack Electronics case, because that case is the case that dealt with securities fraud. And that case dealt with securities fraud in the context not only of 34 Act claims, but in the context of 33 Act claims. And this Court decided in the Stack Electronics litigation case that, in fact, the same 9b particularity requirements that govern the alleging of a 34 Act claim equally govern the alleging of a 33 Act claim. And why? Because that's your question, Judge Brunetti. And the reason is because of the social policy. What we don't want to do is to subject business executives, business leaders, publicly traded companies to the tort and perhaps even the torment of having to respond to a complaint that alleges that they engaged in some fairly bad acts, fraud, unless that complaint alleges that fraud with particularity. Now, if, in fact, those same allegations support a 34 Act claim, which has its own pleadings requirement under the Reform Act, also allege, as a result of the same facts, that you have a Section 11 claim, then that same social policy inures to the benefit of those executives that exercise that business judgment and should not have to be called before this Court or any other Court to answer in response to the actions they've taken absent that particularity. Okay. Let me ask. I hear what you say, but I want to make sure I understand this. Assuming that we stay with the accounting method, fraudulent accounting method, and that the complaint alleges for Section 11 this fraudulent accounting, what if and I'm not saying it does because the complaint is so long I'd have to go back and recheck to make sure I'm not wrong. What if another section said stop? I'm going to put another section here now and I'm going to say, gee, maybe this isn't fraud. Maybe what it is is that you're misleading, blah, blah. And so, therefore, those same acts which I've alleged up front sounding in fraud and I mean it in fraud and I meant it to be 11 and I meant it to be specific, maybe I'm going to tell you now that they were also this. Now what? That's then going to devolve to a determination whether the essence of the allegations in that complaint in fact sound in fraud. See, that's what I'm trying to find out. If once you – it's like a dye. If once you put the fraud dye on, you never can rub it out because you've now sounded it in fraud. And so if you're going to go with fraud and you're going to stick to one practice and it was this one, the way they book their revenues, then you're stuck with it. Is that what you're saying? Yes, Your Honor. But I don't want to get hung up on nomenclature or labels. I don't want to get hung up on this complaint being a fraud complaint. This complaint alleges facts. And so what we need to do is we need to assess those facts and determine for ourselves what this complaint sounds like. Now, this complaint may sound in fraud, may sound in negligence, may sound in strict liability. But if in fact we conclude, and rightfully so in this case, that this complaint sounds in fraud, then perforce we are then governed by a 9B analysis. So the label is inconsequential. It's what's set forth in those 100-plus pages that provide a lot of detail and a lot of bulk but do not give you the specificity necessary either under a 9B analysis for purposes of the 33 or 34 Act or the heightened level of pleading under the Reform Act for purposes of the 34 Act claims. So the first order of the analysis in terms of determining whether a statement was false when made is to identify what those statements are. And, Judge Bonetti, I think we talked about it. It's the percentage of completion. And I don't think anybody's quibbling over the statements made with respect to the percentage of the completion. It was followed. Excess revenue was booked as work in progress. And that occurred. I don't think anybody's taking any challenge to the fact that those statements were made or that in fact they were true. The question is what happens if you abuse that percentage of completion method? And that's what's being alleged here. The allegation is not that statements made in the prospectus on its face are false. It's that there is an abuse that occurred after those statements made. And because of that abuse, which violates that and as a result is considered to be misleading, then when it relates back causes those original statements to be false when made. That's the analysis. It's a fairly simple analysis, kind of convoluted to the extent that we have a lot of facts in there. Are we saying that when they pronounce that we are using the percentage of completion method and will book revenues in relation to expenses, that then you're saying later on then they bring in facts to say that those were fraudulent, that that was fraudulent? They are bringing in the facts by showing an abuse of the percentage of completion. And what those facts are in this case. Why isn't that specific enough to show fraud? The only reason I think about it is this allegation about go to the garage in the middle of the night and fire up the computers and then they never book the expenses and that sort of thing. Why is that not particular enough? I mean, assuming that we're going to go with this silence and fraud, why isn't that particular enough for 9b? It can be particular enough for 9b if in fact what you have is facts showing that the abuse relates back and indicates the preexisting statement was false. How do you do that? Counsel, you're getting me confused as to sequence. At the time that they made those statements, they were indulging in this, shall we say, imaginary process. And I'm not following. What was the question? Their accounting practices came before, during and after those statements. Is that not correct? That is correct. They continued to use that same accounting method throughout the life of the plaintiff. So at the time that the statements were made, they were misleading. If in fact the abuse that is being alleged by the plaintiffs in this case shows that there is a certain disparity, that is there's a difference between what should have been recognized as revenue and what was recognized as revenue, then one could infer, if strong enough, that in fact the statements made were misleading. You're correct. That could happen. But that didn't happen here. You're right where I was when I was trying to read this. If I use this method and I've got a pending – I'm just – this is an example just to see if I get this right. I have a pending contract and I anticipate certain revenues. So I pull in 20 percent of the revenues the first time. I use the work in progress to offset what I haven't really received. And I do this consistently, but I'm not intending to fool anybody. And it's right on the statement. You can read that I've got so much work in progress. It's going up like crazy. My receivables are going up like crazy and my revenue is up. So anybody can analyze and say, wait a minute, I don't like the looks of this. But I didn't do it to say that isn't true. It's very true that the work in progress is there. It's very true that – nobody said that the numbers were wrong. They said it's where the numbers were put. Now, are you saying that once you get to that point, you see the numbers, that you then have to particularly say what the fraud is and tie it into the representation period? Certainly. Absolutely. And are you saying that they didn't particularize any transaction within the work in progress, within the revenues taken on the 20 percent, other than the fact that they did it? You did it, so therefore it must be fraud. That's exactly what Judge Lorenz said. Well, I'm looking at Judge Lorenz and I'm trying to find – because we review for error. We're not making this up. So that's why I'm trying to find out where the error is and find what your position is. So as long as it's there and you don't plead why it's there that equals fraud, then there's no fraud particularity with regard to 9b. Is that your position? That is correct, Your Honor. That is correct. And the thing about this is that they were given the opportunity to do this, to plead the numbers, if you will. And what was – what is important here is if you're going to infer that a previous statement was false when made, that is, in the prospectus we said we followed the percentage of completion and we booked the excesses, work in progress, and, in fact, all that's true, but later abuse of that percentage of completion method now makes that preexisting statement false, then you're going to have to show me why it's an abuse. You're going to have to show me quantum. You're going to have to show me the differences between that which should have been booked or recognized as revenue under the percent of completion method and that which was. It's simple. And this was part of a definitive roadmap that Judge Lorenz articulated in dismissing the second amended complaint without prejudice. I'm still on a hunt for the law in this case. And one area that troubles me also, there's allegations, and I'm not going to try to be specific because I can't. There's too much there. But I understand the general allegations and the argument in the briefs to be that the family owning the stock did these practices deceptively, pumped the value up, and dumped their stock. And there's a scientific. Sure. Now, maybe I missed reading that, but that's my feeling as I read this, that this clearly shows what they were doing was trying to deceive the public, practice a fraud on them, and they made all this money. Which apparently there's no doubt that they did. Nobody's contesting that they didn't sell and make this money. That is correct. So how does that fit in the analysis? Well, that fits in the analysis when you get to the 34 Act because that is what's going to prove scientific. That's one of the elements. Now, we all know that under the Silicon Graphics case, that's not going to be enough. But it can contribute to the analysis, and no one's quarreling with that concept. Can anybody state a viable complaint after Silicon? Yes, Your Honor, they can. And as a matter of fact, I think this Court has affirmed certain cases that, in fact, can be stated after Silicon Graphics. But it takes thought and it takes a lot of work. And that is exactly what Congress intended under the Reform Act. And I think that's what you were trying to get at 10 years ago when you decided and wrote the Glenn Fed Securities Litigation Opinion. I see I have very little time remaining. What I would like to do is, absent other questions, to shift to the cross-appeal, because we cross-appealed on an issue with respect to the mandatory nature of the review by the lower court after the case has been dismissed. And what we said in our cross-appeal is that Judge Lorenz should have Suez Plata, on his own, decided whether or not the case or whether or not the complaint satisfied those pleading requirements as set forth under Rule 11. Now, it's not a Rule 11 motion, but it is a Rule 11 analysis. And while you follow Rule 11 to determine whether it's frivolous, you don't follow the motion practice attendant to Rule 11, for example. You don't have to file a motion. You don't have to file a 59E request to amend the judgment. None of those are required under the statute. The statute's clear. Congress said you will. It's mandatory. And we set forth the legislative history to show exactly that, that it's a mandatory review, without the necessity of a motion. We did not follow a motion, but that's because we didn't have to. The award of fees is the proper measure with respect to a complaint that ultimately would find or that would be fined violative of Rule 11. And what we would contend is that the case should be remanded to the extent and the singular extent of reviewing the complaint to determine whether, in fact, it satisfied the Rule 11 requirements. Otherwise, we would contend that the balance of the case should be affirmed for the reasons that we've submitted. And with that, I'll reserve the balance of my time for any rebuttal. Thank you. Very well. Thank you, Your Honor. It may sometimes be hard to construe precedents to make sense and rules to make sense, but I believe this Court strives to construe the rules of civil procedure to do substantial justice. I think the rules of civil procedure say they're to be construed that way, maybe in Rule 1. Opposing counsel says that Vest was not a PSLRA case and says, look at Stack. But I don't believe Stack was a PSLRA case either. With the PSLRA, Congress observed that there were conflicts among the circuits with respect to pleading standards for securities cases as to what kind of particularity has to be pleaded and when. And Congress decided to resolve those. And what did it do? It imposed particularity for 34 Act claims and 34 Act claims alone. It enacted Section 21db1 in the 34 Act requiring particularity. There are a lot of parallel requirements in the 33 Act that it passed regarding class notice and attorney's fees, et cetera, et cetera, et cetera. But it decided not to require any particularity for 33 Act claims, even though it added to safe harbor making some 33 Act claims for forward-looking statements require actual knowledge of falsity, require actual fraud for a limited small subset of the 33 Act claims. So if the PSLRA is relevant, if congressional action and intent in 1995 for the pleading standards is relevant, it shows Congress does not intend particularity for Section 11 claims and Section 12 claims. Are you saying that buried within any complaint sounding in fraud, there's a lesser included claim under a different section of the Act? No, I'm not. If I had a claim that was based on exclusively a statement and a prospectus that's within the safe harbor where I must show actual knowledge of falsity, that is clearly a 33 Act claim that sounds in fraud. Now, I don't think that Congress intends for it to be subject to particularized pleading standards. But if this Court insists that there must be 33 Act claims that sound in fraud and are absolutely subject to those, you know, heightened pleading standards, that's the claim. If it's a representation that goes to state of mind exclusively as an intention of how to use the proceeds, as in Lord Bowen's dictum, yeah, I suppose that's a 33 Act claim that sounds in fraud, and you can't plead it any differently. In Stack, the claims went to intention to introduce a product, intentional concealment. Well, if you didn't, again, going to state of mind as to what the prospectus said is what makes it misleading. And also to channel stuffing. Channel stuffing almost by definition is an intentional accounting violation. It's not one that, you know, can be done inadvertently or negligently. So Stack is consistent with that interpretation. And I want to go on and say that we've got good Section 10b claims. We've got a strong inference of standard. We've got detailed facts of intentional manipulation of accounting rules in order to inflate the results. There's the example that you referred to at the end of the second quarter, the last Saturday in June, calling people in to plug, you know, computers in and bill a little bit of time so they could recognize 30 to 40 percent on that contract. That's outrageous. That's knowing misconduct. That's intentional fraud. You've got the Candler Health Systems at the very end of the third quarter where there's no contract. They order some equipment and recognize 20 percent. They never get a contract. They have to write the equipment off. That's intentional misconduct. That's not accidental. You've got University of Chicago contracting the first quarter of 98. Again, no contract, and they recognize revenue. And what are our sources for these things? You've got Confidential Witness 24, the project manager on the University of Chicago project. You've got Executive Assistance. You've got accounting department people. We've got the facts for a Section 10b claim. Just based on that without motive, without any motive. Well, let's look at motive. You've got massive insider sales. You've got 28 percent of their stock apiece sold by the Dow Brothers at over $11 million each. Fred McGee, the chief financial officer, sells around 80 percent of his stock. McNeil, the chief operating officer, 67 percent. And Moran, a director, 43 percent. That's $30 million in insider selling in large percentages. That's probative of cyander under this Court's precedence, Your Honor. So are the company's motivations. In Howard v. Everett, the fact that it looked like accounting statements might be wrong and the company was applying for a line of credit, wanted to keep its credit and wanted more credit was enough of a financial incentive to create the motive to survive summary judgment in the Section 10b case on cyander. Here, it's not just getting a line of credit where you're going to have to get some money and pay it back. Here, you're raising cash that you get to keep in public offerings. You know, on the 13th of February, 97, almost $16 million in motive. 15 August, 97, another $35 million offering, nearly $10 million of it to the company. And $137 million in corporate acquisitions using stock to acquire other companies. Other courts, the Second Circuit, for example, and Rothman v. Greger have recognized that using stock for corporate acquisitions is relevant to cyander. It might not raise a strong inference all by itself, but you don't look at these things all by themselves. That's what this Court held in Brutto. You've got to look at all of the aggregate facts together. You've got to accept plaintiff's allegations. You've got to consider other inferences. I understand your opinion in Vom Praetor against physics, but when you look at the big picture here, you accept the facts that are alleged, and you draw reasonable inferences in plaintiff's favor, we've got a strong inference of cyander. And there's not a reasonable adverse inference about those people coming in on that last Saturday in June, Your Honor. Your time is up. Thank you very much. Excuse me. You have five minutes. Thank you, Your Honor. That's a good closing argument. But that's not what allegations of a complaint need to allege. The plaintiffs were told what the allegations need to allege. It's the difference between that which should have been recognized and that which was recognized. They didn't do it. They failed. It's over. If you have a percentage of completion method that itself is supposed to be grounded in fraud, and, in fact, there's no evidence of that fraud because they can't allege the difference between what should have been recognized and what was, the case should be dismissed. How do we handle that allegation about the one hospital where they had booked the revenue and I'm not going to say it was 40 or whatever, whatever the booking was, and then they never got the contract? Now, how do we say that that is improper in the pleading under what you say has to be fled? If there's no contract and they booked it, what difference does it make? The income was improperly booked, right? How much was booked? Excuse me? How much was booked?  Is it material? Was it misleading as a result? I don't know. Counsel alleges 40 percent, but I mean I guess. Well, 40 percent of zero is zero, Your Honor, and that's what the lead reader is left wondering to surmise. And that's where Judge Lorenz and the defendants had the trouble. There's a lot of bulk here. This complaint is in excess of 100 pages. There is a lot of specificity there. But add it up and you still don't get that relation back to a statement being false when made. Okay. Let's presume, as we have to under a 12B analysis, that the percentage of completion method was abused. Well, if it was abused, then the magnitude of that abuse is going to allow a court or a trier of fact to infer that the statement when made that we're following a percentage of completion method in a certain way was, in fact, false when made. But we need that necessary allegation to understand whether that inference should relate back. The reader is left to guess, because there is no allegation in the complaint. That's the problem. It's fundamental. It's very easy. That's why Judge Lorenz dismissed the case without the lead for men, because they've been given the chance. They've been told the way to go. And they've been given the chance to imagine and reflect these details, and their repeated and seeming inability to do so, or at least failure to do so, does reflect the fact they can't. And if they can't, then there's no reason to give them a fourth or fifth chance. Plus, that sequential series of opportunities to amend itself flies in the face of the Reform Act. The Reform Act is designed to deter abusive pleadings and litigation practices. And if the plaintiffs in this case get to go into court four different times and then get to come up to the Ninth Circuit Court of Appeals for a fifth time and say, just give me one more chance, that itself flies in the face of why it is that the Reform Act was enacted in the first place. They cannot relate back an abusive POC, percentage of completion, to show that a statement was false when made. That's the end of the story. That's the end of the analysis. And it applies equally to 34 Act claims and 33 Act claims. And the most telling thing about this, the most remarkable thing about this, is that this percentage of completion method, as you were indicating, Judge Fletcher, earlier, was used before, during, and after the registration statement, the prospectus, and subsequent 10-Qs, 10-Ks, always receiving a clean auditor's opinion from their auditors, always saying that the financial statements show in a certified way that the company was giving. And I guess we don't have quite as much confidence in auditors since then, Ron. No, I don't. That may be good auditors or it may not be bad, but we don't think the way we once thought. I understood, Your Honor, and I can certainly in this climate understand why that is. But in this case, the fact of the matter is there's no indication that anybody had a second thought that what was transpiring was wrong. And the interesting part about it is that because they continued to use this method, whatever rung the inflation out of that stock cannot be related to that, because they continued to use it. So where's the causation? Sure. I understand that Dura Pharmaceuticals indicates certain things, and, Justice Pregerson, I read the opinion. But there's still a requirement that there has to be causal nexus. That just doesn't exist in this case. And as a result, this Court should affirm the dismissal. Thank you. All right. It's good to have you readers here with us today. We'll matter of stand submitted. We have the first case now. Go back to one. Martin. All right. We'll come to Martin versus Kerry. Thank you.
judges: B. Fletcher, Pregerson, Brunetti